## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Case No. 1:18-cv-02522-DDD-GPG

ALVARO HERNANDEZ,

      Plaintiff,

v.

CORRECT CARE SOLUTIONS, LLC,
CORRECTIONAL HEALTHCARE COMPANIES, LLC,
KIMBERLY SPANGRUDE,
LISA CULVER-BARRIENTOS,
DANIELLE RECCHIA,
CATHERINE MORIN, and
UNKNOWN HEALTH SERVICES ADMINISTRATOR,

      Defendants.

---

## ORDER ADOPTING IN PART THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING MOTIONS TO DISMISS

---

Plaintiff, a pretrial detainee, has permanent vision loss in his right eye, which he alleges is the result of negligence and deliberate indifference to his serious medical needs by healthcare providers at the Montrose County Detention Center in violation of the Fourteenth Amendment. Defendants filed motions to dismiss for failure to state a claim. (Docs. 45, 46.) Magistrate Judge Gordon P. Gallagher recommended that the motions be granted in part and denied in part. (Doc. 77.) Before the Court are the timely, and only, objections to the recommendation, filed by Defendants Correct Care Solutions, LLC and Correctional Healthcare

Companies, LLC ("Entity Defendants"). (Doc. 79.) For the following reasons, the Court **ADPOTS IN PART** the recommendation and **SUSTAINS** the objections.

## I. PLAINTIFF'S ALLEGATIONS

The following allegations are taken from Mr. Hernandez's Amended Complaint (Doc. 41) and are treated as true for purposes of assessing the motions to dismiss. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013).

Plaintiff Alvaro Hernandez was a pretrial detainee housed at the Montrose County Detention Center from September 12, 2016 to March 1, 2017. Entity Defendants are limited liability companies that contract with Montrose County to provide medical services to detainees at the detention center. Defendants Kimberly Spangrude, Lisa Culver-Barrientos, Danielle Recchia, and Catherin Morin (collectively, "Individual Defendants") are alleged to be nurses at the detention center and employed by Entity Defendants. (Doc. 41, at 4–5.)

On September 12, 2016, Mr. Hernandez suffered a traumatic brain injury and was admitted to the hospital. When he received medical clearance, he was booked into to the detention center. On September 17, he returned to the hospital, where he was diagnosed with corneal abrasion and broken blood vessel in his right eye. He was advised to follow up with a healthcare provider if he did not improve. From September 17 to 20, Mr. Hernandez complained of pain, dizziness, vomiting, blurred vision, and a bloodshot right eye. Nurses at the detention center provided ibuprofen, an ice pack, and told him to "contact medical" if his symptoms worsened.

By November 1, a nurse noted that his eye was still red, infected and torn, and his vision was still blurred.

As arranged by detention center nurses, Mr. Hernandez saw several outside medical providers. On November 4, he visited the San Juan Eye Center. There, Dr. Jared Hadlock diagnosed him with a traumatic cataract of the right eye and referred him for surgery. From November 15 to 18, Mr. Hernandez continued to experience discomfort. He then saw Dr. Michael Waggoner of ICON Eye Care, who prescribed him multiple medications to relieve pressure. A scan indicated no retinal detachment or hemorrhage. Dr. Waggoner suggested Mr. Hernandez be seen by a retinal specialist as soon as possible. He advised that Mr. Hernandez was at risk for permanent optic nerve damage and blindness. On November 29, a nurse at the detention center noted that Mr. Hernandez continued to have a large cataract on his right eye, but she said Defendants would not be making a referral to a specialist for cataract surgery. The nurse told him he would need to follow up with a primary care provider. Mr. Hernandez alleges "[u]pon information and belief, the final decision to decline to refer [him] to a specialist was made by an Unknown Health Services Administrator employed by [Defendants]."

On November 30, Dr. James Fox treated Mr. Hernandez for glaucoma and advised that he likely had permanent optic nerve damage. On January 5, 2017, Dr. Fox noted that the glaucoma was resolved, as well as a papillary blockage, but also identified the possibility of a detached retina. He referred Mr. Hernandez to a Dr. Waterhouse at the retinal center. One of Defendants' referral request forms, dated

January 24, indicates "possible retinal detachment" and that Mr. Hernandez was financially liable for these services. On January 27, Dr. Waterhouse confirmed the detached retina and ordered surgery, which he performed on February 22. On March 14, Dr. Waterhouse noted extremely limited vision (hand motions only) in Mr. Hernandez's right eye. There was no improvement by April 3. Handwritten notes from nurses at the detention center reflect Mr. Hernandez's worsening symptoms during his time in custody.

Mr. Hernandez alleges that Entity Defendants, a "national company with a shameful history of failing to provide constitutionally adequate medical care," have an "informal, unwritten custom and practice of deliberate indifference to inmates' serious medical needs" and "fail[] to adequately train employees in meeting the serious medical need of inmates" to "avoid the added expense of providing such care."

## II.   RECOMMENDATION OF THE MAGISTRATE JUDGE

On October 2, 2018, Mr. Hernandez filed this case. On March 5, he filed the Amended Complaint, which contains two causes of actions against all Defendants: (1) deliberate indifference to serious medical needs in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 and (2) medical negligence. Defendants moved to dismiss, with prejudice. *See* Fed. R. Civ. P. 12(b)(6). The Court referred the motions to the magistrate judge for a recommendation.

Magistrate Judge Gallagher, in a thorough opinion, first recommended that the Court dismiss the Individual Defendants. He evaluated Mr. Hernandez's

Amended Complaint and determined that the allegations against the nurses were "extremely limited" and did not establish that any of them knew of, and disregarded, an excessive risk to Mr. Hernandez's health and safety. He concluded that Mr. Hernandez failed to state a claim against them.

But the magistrate judge also recommended that the motions be denied with respect to the entity Defendants. (*See* Doc. 77, at 20–23.) He found that Mr. Hernandez had sufficiently alleged these entities' (1) vicarious liability for negligent acts and omissions and (2) failures in training, policies, and practices. On the constitutional claims, he was impressed by "alleged consistent failure to timely act across a scope of medical issues" and a "track record of providing deficient medical care at detention facilities" of which Entity Defendants should be aware.

## III. OBJECTIONS AND ANALYSIS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but the Rule calls for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009). "The degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient

factual allegations, depends on context." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.*

## A. Individual Defendants

No party has objected to the recommended dismissal of the Individual Defendants, and the time to do so has expired. *See* Fed. R. Civ. P. 72(b)(2); *see also* Recommendation, Doc. 77, at n.2 (advising the parties of the time limit for filing objections and the consequences of not doing so). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). In this matter, the Court has reviewed the recommendation to satisfy itself that there is "no clear error on the face of the record." *See* Fed. R. Civ. P. 72(b) advisory committee's notes. The magistrate judge concluded, correctly, that no allegations plausibly alleged the subjective prong of the constitutional test, and the record is replete with accusations that demonstrate adequate medical care. As Magistrate Judge Gallagher opined, the allegations—that they noted worsening symptoms and arranged for visits to various outside healthcare providers—read plausibly against the Individual Defendants, demonstrate a reasonable exercise of their medical judgement and the absence of deliberate indifference. There being no

clear error on the face of the record, or with the magistrate judge's reasoning, dismissal of the Individual Defendants is appropriate.

## B. Entity Defendants

The Entity Defendants object to those portions of the recommendation which allow Plaintiff's claims to proceed against them. Mr. Hernandez has not responded to or opposed the objections. The Court reviews de novo a magistrate judge's recommendation that has been timely objected to. Fed. R. Civ. P. 72(b)(3).

### 1. Section 1983 Claims

Pretrial detainees, like Mr. Hernandez, are entitled to the same degree of protection regarding medical attention under the Fourteenth Amendment as that afforded convicted inmates under the Eighth Amendment. *Martin v. Bd. of Cty. Comm'rs of Cty. of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990); *see also Barrie v. Grand County*, 119 F.3d 862, 867 (10th Cir. 1997) ("The constitutional protection against deliberate indifference to a prisoner's serious medical needs. . . applies to pretrial detainees through the due process clause of the Fourteenth Amendment."). The Fourteenth Amendment's Due Process Clause, therefore, provides a cause of action for injuries caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted).

Private companies like the Entity Defendants here may be held responsible for any constitutional harms caused by their employees acting under color of state law. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (finding

standard announced in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny applicable to certain private defendants). To state a claim, a plaintiff must plausibly allege (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013). Although municipal liability is not identical to *respondeat superior* liability, there can be no such liability absent the commission of a constitutional tort by an employee acting under color of state law. *Myers v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 151 F.3d 1313, 1316 (10th Cir. 1998).

Despite his recommended dismissal of the constitutional claims against every named individual, the magistrate judge would permit the claims against their employers to proceed. Defendants object, noting that this recommendation runs contrary to law. The Court agrees. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) ("A county or sheriff in his official capacity cannot be held 'liable for constitutional violations when there was no underlying constitutional violation by any of its officers.'" (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002)); *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155–56 (10th Cir. 2001) (Even if the "policies, training, and supervision [of the individual county defendants] were unconstitutional, the [county] cannot be held liable where, as

here, the officers did not commit a constitutional violation."). The Court, therefore, cannot permit a constitutional claim against any entity where none of its agents has been adequately alleged to have committed any such wrong. The objection is sustained on this ground; the Court need not address Defendants' other arguments. Because the claims against the individual defendants are dismissed with prejudice, so too are these claims.

### 2. Negligence Claims

The Court had original jurisdiction over the Section 1983 claims. The negligence claims against Defendants are before the Court pursuant to its supplemental jurisdiction. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3); *see also, e.g.*, *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (concluding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over a plaintiff's remaining state-law negligence claims and stating that "we have repeatedly recognized that this is the preferred practice"). The Court has now dismissed with prejudice all claims over which it had original jurisdiction. So, consistent with the preferred practice of district courts in the Tenth Circuit, the Court does not exercise supplemental jurisdiction over the negligence claims against these remaining entity Defendants. These claims are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** the recommendation of United States Magistrate Judge Gordon P. Gallagher (Doc. 77) and **SUSTAINS** Defendants' objections (Doc. 79). The motions to dismiss (Docs. 45, 46) are **GRANTED IN PART**. Mr. Hernandez's constitutional claims are **DISMISSED WITH PREJUDICE**. His negligence claims against Kimberly Spangrude, Lisa Culver-Barrientos, Danielle Recchia, and Catherin Morin are **DISMISSED WITH PREJUDICE**. His negligence claims against Defendants Correct Care Solutions, LLC and Correctional Healthcare Companies, LLC are **DISMISSED WITHOUT PREJUDICE** to his right to refile them in a court of appropriate jurisdiction. The Clerk shall enter judgment as set forth herein and close this case.

Dated: September 5, 2019.

BY THE COURT:

*/s/ Daniel D. Domenico*
Daniel D. Domenico
United States District Judge